# Lee *v.* State.

In Banc. April 11, 1949.

No. 37029. (39 So. (2d) 868).

**Stirling & Stirling,** for appellant.

**R. O. Arrington,** Assistant Attorney General, for appellee.

**Hall, J.**

Appellant was indicted under Section 2361 of the Mississippi Code of 1942 for an assault with intent to forcibly ravish a female of previous chaste character. Upon his

first conviction he appealed to this Court and the judgment of the Circuit Court was affirmed. Lee v. State, 201 Miss. 423, 29 So. (2d) 211. Thereupon he filed a suggestion of error which was overruled, 201 Miss. 434, 30 So. (2d) 74. From that action he appealed to the Supreme Court of the United States and the decision of this Court was reversed because of the improper admission in evidence of a confession by appellant. Lee v. State of Mississippi, 332 U. S. 742, 68 S. Ct. 300, 92 L. Ed. ——. In obedience to the mandate of that court the cause was by this Court remanded to the trial court for a new trial. Lee v. State, 34 So. (2d) 736.

Appellant was again tried and convicted and now prosecutes an appeal to this Court from the judgment entered at the second trial. He raises identically the same questions which were raised on the former appeal and, with a few modifications and additions, has filed identically the same brief which was filed on the former appeal. These questions were decided adversely to appellant's contentions on the former appeal, and, with the exception of the points hereinafter discussed, we adhere in all respects, without repetition, to what was said in the original opinion therein.

Appellant again complains about the action of the trial court in admitting in evidence his confession given on the afternoon following the crime. In the original opinion on the former appeal it was pointed out that the appellant testified at the trial that several hours before his alleged confession was obtained two plain clothes men had brought him from the jail to the office of the jailer and had struck him twice and had warned him that if he went "down stairs and said he didn't do it, it will be mighty bad for you" [201 Miss. 423, 29 So. (2d) 212]. It was further pointed out therein that the jailer denied that such an incident occurred, but that the said plain clothes men were not introduced as witnesses to deny it, and it was then said that such conduct of the detectives, if true, would be indefensible and would warrant and re-

ceive our condemnation, but that the issue of fact and the credibility of the testimony was for determination by the trial judge and that we would not disturb his conclusion. In the opinion rendered on the suggestion of error after affirmance of the lower court on the former appeal this Court pointed out that the appellant denied that he ever made any confession at all and that this was contrary to his contention that his confession was induced by threats and fear; in that opinion this Court further said [201 Miss. 434, 30 So (2d) 75], ''If the accused had not denied having made any confession at all, we would feel constrained to reverse the conviction herein because of the fact that his testimony as to the threat made to him during the forenoon by the plain clothes men is wholly undisputed, the jailer not having been asked about this threat, and having testified only that he was not struck by anyone in his presence after his arrest for this crime. But, we think that one accused of crime cannot be heard to say that he did not make a confession at all, and at the same time contend that an alleged confession was made under the inducement of fear.''

The Supreme Court of the United States limited its decision solely to the validity of the conviction based upon use of the oral confession and disagreed with our conclusion as expressed in the last sentence above quoted. It held that the due process clause of the Fourteenth Amendment to the United States Constitution invalidates a state court conviction grounded in whole or in part upon a confession which is the product of other than reasoned and voluntary choice, and that a conviction resulting from such use of a coerced confession is no less void because the accused testified at some point in the proceeding that he had never in fact confessed, voluntarily or involuntarily.

 Upon the second trial, now under review, the appellant testified that Officers Rogers and McLeod questioned him at about 3 o'clock in the afternoon on the day following the alleged crime, that they were nice to him and

did not strike or threaten him, that he did not admit the crime to them, but that he did tell them that two other detectives or plain clothes men had treated him rough on the forenoon of the same day. He further testified that on that morning two detectives or plain clothes men came to the jail where he was incarcerated on the upper floor of the police station of the City of Jackson, and that he was removed to the office of the jailer and that in the presence of the jailer these two men measured his foot and stated that he was the one who did it, and he replied that he was not the one, and that thereupon one of the men struck him in the chest and the other struck him in the stomach and insisted that he was the guilty party and told him that if he went down stairs and said that he didn't do it, it would be mighty bad for him. To rebut this testimony the prosecution offered the jailer as a witness and he testified positively that no such incident occurred in his presence. The prosecution also introduced the Chief of Police of the City of Jackson and he testified that at that time there were only eleven plain clothes men or detectives on the city police force; he gave the names of all these men; some of them were no longer in the service, but all of these were produced as witnesses and each and every one testified that no such incident occurred as had been related by appellant. These men were all lined up before the appellant while he was on the witness stand and he was asked whether any one of them struck him or threatened him and he said he was unable to identify any one or more of them as being present when he was struck and threatened. He was then questioned about these men, one at a time, and he would not say that he was struck or threatened by either of them. The prosecution further showed that the jailer was in sole charge of the jail and that no person had access to any prisoner without the presence of the jailer as he carried the jail key with him at all times. Officers Rogers and McLeod both testified that when they questioned appellant in the afternoon regarding the crime

they first told him that anything he might say would be used against him, that he was not required to make any statement or answer any questions, that nothing was promised to him, and they asked him if he was willing to freely and voluntarily make a statement and he replied that he was. They testified and he admitted that neither of them threatened him or talked rough to him in any manner and that no sort of coercion or violence was used. In fact, as above stated, appellant testified that these men were nice to him. They prepared a written statement in question and answer form and read it over to him and asked him if it was correct and he replied that it was, and thereupon he stated to them that a couple of plain clothes men had gotten rough with him that morning up in the jailer's private office. With this statement from appellant the officers did not question him any further and did not ask him to sign the statement which they prepared. All of the above testimony was taken preliminarily out of the presence of the jury and the trial court held that the confession was admissible in evidence. Thereafterward the same testimony was taken in the presence of the jury. The written statement was not offered in evidence; during the trial one of appellant's attorneys requested that he be permitted to inspect it, which privilege was accorded him, and another of his attorneys objected to its introduction and this objection was sustained by the trial court. Officers Rogers and McLeod testified, however, that appellant freely and voluntarily told them all the details of the crime, which details they related to the jury. According to their testimony appellant admitted that he was the one who went to the home of the victim, watched through a window as she undressed for the night and waited until she was asleep in a rear bedroom within reach of the window; that he used a nail in punching three holes into the window screen so as to loosen the latch which held it shut, and that he then raised the screen and started in the window and the victim moved in her sleep and he

struck her three blows with a soft drink bottle which he had picked up in the garage, whereupon she screamed and he fled. He further told the officers that he committed this assault with the intent to rape this child who was only thirteen years of age at the time. It was proven without dispute that this questioning was done in an open office in the police station, situated between two other offices where employees of the city were engaged at work and that there was no secrecy whatever surrounding the interview. The victim of appellant's lustful assault was shown to be of previous chaste character. The appellant was seventeen years old when the crime was committed; he was well developed both physically and mentally, and had already completed a four year course and had graduated with a High School diploma from Southern Christian Institute. The record here discloses that appellant was not only very resourceful but was also unusually bright. Under the foregoing proof we are of the opinion that the trial judge did not abuse his discretion in admitting the confession in evidence for consideration by the jury, and that the appellant was not thereby deprived of any constitutional right. Street v. State, 200 Miss. 226, 26 So. (2d) 678, and authorities therein cited.

In this connection we observe that the appellant requested and was granted seventeen instructions to the jury which covered every conceivable phase of the law applicable to this case. One of these, instruction No. 16, submitted to the jury the issue as to whether the confession was free and voluntary and told the jury that if there was any doubt that it was free or voluntary, or if there was any doubt as to whether it was obtained through any duress, oppression, fear, hope of reward or in any manner or by any means which kept it from being a completely free and voluntary statement or expression of the defendant at the time it was made, then such doubt should be resolved in favor of the defendant. The issue as to the validity of the confession was decided

initially against the appellant by the trial court before the jury was even permitted to hear the evidence thereon, and was subsequently decided against the appellant by the jury after the evidence was presented to the jury. Upon the record presented in this case our views and conclusions are supported by the Supreme Court of the United States in the case of Lisenba v. People of State of California, 314 U. S. 219, 62 S. Ct. 280, 291, 86 L. Ed. 166, where it is said:

"There are cases, such as this one, where the evidence as to the methods employed to obtain a confession is conflicting, and in which, although denial of due process was not in issue in the trial, an issue has been resolved by court and jury which involves an answer to the due process question. In such a case we accept the determination of the triers of fact, unless it is so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process.

"Here judge and jury passed on the question whether the petitioner's confessions were freely and voluntarily made, and the tests applied in answering that question rendered the decision one that also answered the question whether the use of the confessions involved a denial of due process; this notwithstanding the issue submitted was not eo nomine one concerning due process. Furthermore, in passing on the petitioner's claim, the Supreme Court of the State found no violation of the Fourteenth Amendment. Our duty then is to determine whether the evidence requires that we set aside the finding of two courts and a jury and adjudge the admission of the confessions so fundamentally unfair, so contrary to the common concept of ordered liberty as to amount to a taking of life without due process of law.

"In view of the conflicting testimony, we are unable to say that the finding below was erroneous so far as concerns the petitioner's claims of physical violence, threats or implied promises of leniency."

Appellant also assigns as error the action of the trial court in overruling a motion, made at the conclusion of the trial, to strike certain evidence theretofore admitted without objection. To grasp the full import of this assignment it is necessary to review the evidence to which it is directed. There was introduced at the trial a plat of the area in which occurred the events herein set out. This plat shows that Bailey Avenue runs north and south. Wood Street is located one block to the east thereof and parallel therewith. Ash Street runs east and west and extends from Bailey Avenue on across Wood Street and to the railroad tracks. Jessamine Street also runs east and west and extends from Bailey Avenue to Wood Street. Thus there is shown by the plat a city block bounded on the west by Bailey Avenue, on the south by Ash Street, on the north by Jessamine Street and on the east by Wood Street. From Wood Street toward the railroad along Ash Street is a distance of about one and one-half ordinary city blocks over to Pleasant Avenue, which parallels the railroad and is practically against the railroad. In the square above mentioned, fronting on Bailey Avenue, there are six city lots, each fifty feet in width; Lot No. 1 is at the intersection of Bailey and Ash and each succeeding lot is north thereof, terminating with Lot No. 6 at the intersection of Bailey and Jessamine. Behind these lots there are others in the same block numbered from 7 to 18 inclusive. Lot No. 1 was occupied by W. P. Speight, Lot No. 3 was occupied by the Wade sisters, and Lot No. 5 was occupied by the victim here and her parents. The crime here was committed at about 11:30 P. M. At about 11 P. M. Speight discovered a prowler in the rear of his house and telephoned the police department. A request was put on the police short-wave broadcasting station for a patrol car to go to that address and a car arrived in a very few minutes with Officers Hall and Lowrey. They searched the Speight premises and found nothing. About the time the search was concluded another call came over the short-wave radio advising that

there was a prowler at the home of the Wade sisters on Lot 3 of the same block, and about that time another police car arrived with Officers Bruton and McLeod. These officers searched the Wade premises and found nothing and they, with others who had congregated, were on the sidewalk at the front. Presently someone called attention to a person running south along the rear of these lots and coming from the direction of the residence on Lot 5. Officer Bruton and Speight ran around the corner of Bailey and Ash to the rear of the Speight home to try to head off the person who was running; they did succeed in doing this and the runner stopped behind a pick-up truck in the Speight back yard. Officer Bruton put his flashlight on this person and both he and Speight identified him as the appellant here. The appellant, however, darted away and ran across Ash Street and eastwardly toward its intersection with Wood Street.

In the meantime, Policeman Hall had driven around the block in his car and had parked it and had gotten out and stationed himself under a tree at the intersection of Ash and Wood. Appellant ran right under the street light at that point and within about thirty feet of Hall, and Hall thereupon called upon him to halt, which he did momentarily, and Officer Hall recognized him, and then the appellant again darted away and went eastwardly toward the railroad track. In the meantime still a third car with two policeman had arrived on Bailey Avenue and one of these officers drove in that car on around the two blocks and parked on Pleasant Avenue and presently accosted and arrested the appellant on the railroad track, at which time the appellant was panting and breathing heavily as if he had been running, he was sweating, and his shoes were wet and his trousers were wet up to about the knees. It was shown that there was high grass on the rear part of some of the above mentioned lots and that this grass was heavy with dew which would have wet the trousers of a person walking or running through it. Appellant was immediately carried

back to Bailey Avenue and was identified by Speight and Officers Bruton and Hall as being the same person who had just a few minutes previously been running across the rear of Lots 1, 2, 3, and 4 and away from Lot 5.

He was also identified by Miss Nadine Wade as being the prowler whom she had seen at her window on Lot 3. Miss Wade was absent from the state and did not testify at the second trial and since complaint is made at the reception of evidence as to her identification we digress to say that the evidence of this identification was brought out by appellant's counsel during his cross-examination of one of the state witnesses and thereby it was shown that she identified the appellant on the very night of the crime and within a few minutes thereafter as being the person who had tried to break in her window on Lot 3, and that appellant was present at the time of this identification and made no denial thereof. Even if the testimony on this feature had been objectionable, the fact remains that it was brought out by appellant's own attorney, and consequently he cannot complain. Bonds v. State, 164 Miss. 126, 143 So. 475.

 At the conclusion of all the testimony appellant's counsel moved the court to exclude all evidence about all events which occurred on all of the lots in the aforementioned block except Lot 5 for the reason that all the other events, whether they be intrusions, robberies, felonies, or anything else, were not committed on Lot 5 where the crime was committed for which appellant was being tried. The record shows that practically all the evidence of the events hereinbefore related had been admitted without objection. Upon the making of the above motion the trial court stated to the jury "The defendant is tried here only on the charge of an assault with intent to ravish this young lady. Any testimony relating to any other crime than that is not competent. It is excluded and the jury is instructed not to consider same." Thus it is seen that the trial court excluded from the consideration of the jury all evidence as to any other

crime which may have been committed by the prowling on Lot 1 and by the attempt to break into the window on Lot 3. This was all that appellant was entitled to. The evidence as to his running from Lot 5 across the rear of Lots 4, 3, 2 and 1, and his identification by Speight and Officer Bruton at the truck on the rear of Lot 1, and his subsequent identification when he ran from that point down to the corner of Wood and Ash Streets was competent to show that appellant was on the rear of Lot 5 at the very time the crime was perpetrated.

Since we find no merit in any of the assignments the judgment of the lower court is affirmed.

Affirmed.