204 So.2d 270 (1967)
John DAVIS
v.
STATE of Mississippi.
No. 44501.
Supreme Court of Mississippi.
November 6, 1967.
Suggestion of Error Overruled December 11, 1967.
*271 Jack H. Young, Jackson, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
SMITH, Justice:
Appellant, John Davis, was convicted of the crime of rape in the Circuit Court of Lauderdale County and was sentenced to life imprisonment in keeping with the verdict of the jury. From that conviction and sentence, he has appealed here.
On December 2, 1965, in the City of Meridian, in the early hours of the night, an eighty-six year old white woman was raped in her home by a negro youth.
At the May 1966 Term of the Circuit Court of Lauderdale County, Appellant, John Davis, was indicted for the crime. However, the question having been raised that there had been a systematic exclusion of negroes from jury service in Lauderdale County and the trial court so finding, all indictments, including that against Appellant *272 Davis, were quashed, the jury box emptied and the Board of Supervisors directed by the trial court to refill the box by drawing the names of 1500 qualified persons for jury service. This having been done, a new grand jury was constituted at the November 1966 Term, and Appellant Davis was again indicted for the offense.
Motions to quash the grand jury panel and the second indictment were substantially similar to motions in other cases tried at the same term, including Boyd v. State, 204 So.2d 165, (Miss. Nov. 6, 1967). By stipulation of counsel, transcripts of the evidence adduced upon the hearing of the motions were used in each of these cases. The opinion in Boyd, by Justice Brady, therefore applies with equal force to the motion here. The motion in this case was properly overruled for the reasons stated in Boyd.
Nor does the record support appellant's objection that negroes were systematically excluded from the 75 man special venire from which the trial jury was selected. Two negroes actually served on the jury and seven or eight others were placed in the box, but excused upon peremptory challenge.
Appellant assigns and argues several grounds for reversal.
The fact of rape was established beyond dispute and is not questioned on this appeal. Appellant did not testify. His defense was an alibi, sought to be established by the testimony of two witnesses which tended to show that he was elsewhere when the crime was committed.
The countervailing evidence for the prosecution, identifying appellant as the assailant, consisted of the victim's own testimony that she recognized him, and of finger and palm prints lifted by the police from the window and window sill where the attacker had gained entrance to her home, and identified by the Federal Bureau of Investigation as being those of appellant.
Appellant's first contention is that he is entitled to a reversal of his conviction because he was denied a public trial. The circumstances upon which this argument is based follow.
When the case was called for trial, the first witness for the prosecution was the victim, an eighty-seven year old woman. Of its own motion, the court directed that, during the course of her testimony only, the public would be excluded from the courtroom. The court made it clear that, upon the conclusion of the testimony of this witness, everyone might return and remain throughout the trial. The appellant made no request that relatives be allowed to remain, or that the court make any other exception to the exclusionary order.
Following the court's announcement, this colloquy took place between appellant's counsel and the court:
BY MR. YOUNG: Your Honor, I understand and appreciate the Court's reason for excluding the general public from the court room during the testimony of (naming the witness); but under the circumstances I am going to have to enter an objection for the record, your Honor. I think this would deprive the defendant of a public trial that is guaranteed to him by the Constitution, and we just want this entered in the record.
BY THE COURT: All right. The Court makes this order in order to keep down unnecessary publicity, unnecessary embarrassment, and it believes it is in keeping with the best conduct of a case of this sort, and particularly the, sometimes, ugly curiosity that comes into cases of this sort as far as the public is concerned. The Court does not exclude the public from this trial beyond the testimony of (naming the witness), who is eighty-seven years of age, and a woman considerably known throughout this part of Mississippi.
All right.
*273 The trial then proceeded. After the conviction and sentencing of appellant, appellant moved for a new trial, assigning a number of grounds, but the action of the court in excluding the public during the testimony of the victim was not among them. Nor was it asserted in the motion that the defense had been prejudiced by the exclusion of the public during the victim's testimony.
The action of the court in this regard was an exercise of discretion vested in it under the Mississippi Constitution 1890 section 26, which provides, among other things:
(B)ut in prosecutions for rape, adultery, fornication, sodomy or the crime against nature the court may, in its discretion, exclude from the courtroom all persons except such as are necessary in the conduct of the trial.
In urging reversal upon the ground that this action of the court denied him a public trial, appellant relies principally upon Re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), as interpreted by Lewis v. Peyton, 352 F.2d 791 (4th Cir.1965). Appellant contends that in the latter case, the Circuit Court of Appeals for the Fourth Circuit held that the due process clause of the Fourteenth Amendment to the Constitution of the United States embraced the Sixth Amendment, and guarantees a public trial. He argues that the action of the trial court, in excluding the public during the testimony of the victim, was a violation of appellant's right to the public trial so guaranteed.
In Lewis, the prosecutrix was, as here, an eighty-seven year old woman. However, unlike the case here, she was bedridden at the time of the trial.
In Lewis, the Court of Appeals for the Fourth Circuit set aside the Virginia conviction upon two grounds. First, the entire court and court attendants moved to the bedroom of the prosecutrix in her home in a sparsely settled rural area for the purpose of taking her testimony, and her neighbors were ordered from the courtroom in order to make space in the tiny bedroom for the court officials. Not only were the neighbors excluded during the prosecutrix' testimony, but they were also excluded during the testimony of the only other person who testified in the case. Secondly, the court pointed out that these proceedings had been had without a prior order of record by the trial court as required by a Virginia statute permitting the taking of the deposition of the prosecutrix in a rape case, in the discretion of the court, by court order, without the usual formalities. The court pointed out that no such order had been entered in the case, and said, "(W)e cannot accept the belated contention that the conduct here indulged was a harmless substitute for that procedure." 352 F.2d at 791.
Other cases cited by appellant deal with the exclusion of the general public throughout the entire trial.
The appellant concedes that the exclusion of the public by the trial court during the testimony of the prosecutrix in a rape case has been upheld against constitutional challenge where she was a young child. Geise v. United States, 262 F.2d 151 (9th Cir.1958), cert. denied, 361 U.S. 842, 80 S.Ct. 94, 4 L.Ed.2d 80 (1959), discussing earlier decisions; Harris v. Stephens, 361 F.2d 888 (8th Cir.1966); Hogan v. State, 191 Ark. 437, 86 S.W.2d 931 (1935).
We have concluded that the same reasoning applies with equal or perhaps greater cogency in the case of this eighty-seven year old woman. The exclusion of the public during the course of her testimony, in order that she might not be required to undergo the humiliating and traumatic experience of being compelled to relate in public, and be cross-examined about, the sordid details of the attack upon her, was a reasonable exercise of sound judicial discretion on the part of the trial judge. The consequences to the young witness, supported by the resilience of youth, would be less grave than to one who is suffering the inevitable infirmities and frailties of great age.
*274 We are unable to say in this case that the trial court abused its discretion or prejudiced appellant's rights in excluding the public while the prosecutrix testified. This view is strengthened by the failure of appellant to assign, in his motion for a new trial, this action of the trial court or any ground or prejudice resulting therefrom.
Appellant next contends that the admission of evidence regarding his fingerprints was prejudicial error, arguing that his prints were taken while he was illegally under arrest and did not have the benefit of the advice of counsel.
The police had reached the scene within a short time after the assault. They found a window screen removed from a window opening onto the front porch of the home, and the window raised about half-way. Within minutes, they dusted the window and window sill and lifted palm and fingerprints. The fingerprints were found on the outside of the window and the palm print was found inside, on the sill. The uncontradicted testimony was that this screen had not been off the window for more than a year. The prints found on the outside of the window necessarily would have been between the window and window screen, had the screen been in place. The palm print was inside, on the sill.
The victim had been hospitalized, and was suffering from shock, abrasions and contusions about the face and head, and was in a condition of extreme nervousness. However, she was able to tell the officers that her assailant had been a negro youth, and to give them a description. She did not make a positive identification of appellant at that time, but appellant fulfilled the general characteristics of the person described.
Beginning on December 3, the day following the crime, and continuing until appellant was arrested and charged, the Meridian police interrogated sixty-five or seventy negro youths, including appellant. An officer testified that he "arrested" appellant on December 3, and took him to police headquarters for interrogation. However, the record indicates that appellant was not arrested nor deprived of his liberty nor charged with any offense, but returned to his home following routine questioning and fingerprinting.
In the interim between the commission of the crime and December 12, officers questioned appellant several times, sometimes at his home, sometimes in a car, and sometimes at city hall. Throughout this same period they also questioned many others. He was not placed in jail or charged with any offense, and a substantial portion of the interrogation dealt with an effort on the part of the officers to gain information as to others who might have committed the crime. However, on December 12, appellant actually was arrested, brought to Jackson and subjected to a lie detector test. Apparently it was at this time that he made a "statement" to police, but this statement was not used in evidence and does not appear in the record. Appellant's complaint that he was denied counsel in this connection is without merit. The nature of the statement does not appear, and in any event, it was not used against him.
Pretrial interrogation of a criminal suspect by police, without warning him of his constitutional right to remain silent, and without granting his request for counsel, does not constitute prejudicial error, in the absence of proof that a confession, admission, or statement obtained from the defendant as a result of such interrogation was used in the evidence at the trial. State v. Silvacarvalho, 180 Neb. 755, 145 N.W.2d 447, 449 (1966), followed in State v. Levell, 181 Neb. 401, 149 N.W.2d 46 (1967); State v. Hizel, 181 Neb. 680, 150 N.W.2d 217 (1967). See also to the same effect: Knowles v. State, 194 So.2d 562, 564 *275 (Ala. 1967); People v. Succop, 57 Cal. Rptr. 269 (1967); State v. Corrigan, 4 Conn.Cir. 190, 228 A.2d 568 (1967); State v. Heller, 4 Conn.Cir. 174, 228 A.2d 815, 821 (1966); State v. Wessling, 150 N.W.2d 301 (Iowa 1967); Cox v. Commonwealth, 411 S.W.2d 320 (Ky. 1967); Ross v. Warden, 1 Md. App. 46, 227 A.2d 42, 45 (1967).
Appellant's fingerprints, together with the fingerprints of twenty-three others, whose prints had also been taken during the investigation, with the prints lifted from the window and window sill, were forwarded to the Federal Bureau of Investigation in Washington for study and comparison. The Federal Bureau of Investigation positively identified the fingerprints and palm prints on the window and window sill as being those of appellant. Appellant contends that his prints were taken while he was illegally under arrest and without benefit of counsel, and that this violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution and rendered inadmissible all evidence relating to them.
It is argued that Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (D.C. Cir.1958), is directly in point. But in Bynum, the fingerprints were taken during an interrogation at police headquarters after Bynum had been illegally arrested and booked for the crime with which he was charged. The evidence condemned in Bynum was that "which the public authorities have caused an arrested person to yield to them during illegal detention."
Here appellant was not illegally detained. The argument that he had been illegally "arrested" is based upon the use of that word by an officer in describing what he did. The question as to whether an arrest has been made or not is to be determined from a consideration of what actually occurred. The statement that the appellee was "arrested" must yield to undisputed evidence of facts and circumstances showing that he was not.
In Reed v. State, 199 So.2d 803 (Miss. 1967), this Court held that an arrest had taken place although the officers involved did not so state. The converse is true here. The officer said that he "arrested" appellant but the evidence, which is in no way controverted, shows that appellant was merely escorted to headquarters for interrogation, as in fact, were numerous others, in the course of an investigation by police of an unsolved major crime. It is clear from the record that there was no intention to arrest within the accepted legal meaning of the word.
In Fondren v. State, 253 Miss. 241, 259, 175 So.2d 628, 636 (1965), this Court said:
The mere fact that these officers talked to accused in police headquarters before he was identified and taken to jail does not establish that defendant was under arrest at the time.
Moreover, fingerprints fall into an entirely different category from testimonial communications obtained under interrogation. The privilege against self-incrimination under the Fifth and Fourteenth Amendments to the Constitution of the United States does not operate to proscribe what was done here.
In Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court recognized this distinction and appended a footnote referring to the cases on the subject.
The case was in the investigatory stage, as distinguished from the accusatory stage. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). It is distinguished from Escobedo in that here there was underway "a general inquiry into an unsolved crime."
*276 In Culombe v. Connecticut, 367 U.S. 568, 635, 81 S.Ct. 1860, 1896, 6 L.Ed.2d 1037, 1076 (1961), the Court said:
(O)ften there is little else the police can do than interrogate suspects as an indispensable part of criminal investigation.
In Spano v. People of the State of New York, 360 U.S. 315, 327, 79 S.Ct. 1202, 1209, 3 L.Ed.2d 1265, 1274 (1959), it is interesting to note this language of Justices Stewart, Douglas and Brennan, in a separate opinion: "Let it be emphasized at the outset that this is not a case where the police were questioning a suspect in the course of investigating an unsolved crime."
The case of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is possibly the most restrictive of the recent decisions of the United States Supreme Court of the efforts of police officers to investigate crime. In that case, the Court said:
Our decision is not intended to hamper the traditional function of police officers in investigating crime. See Escobedo v. State of Illinois, (citation omitted). When an individual is in custody on probable cause, the police may, of course, seek out evidence in the field to be used at trial against him. Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present. (emphasis added). 384 U.S. 477, 478, 86 S.Ct. 1629, 1630, 16 L.Ed.2d 725, 726.
In United States v. Kelly, 55 F.2d 67, 83 A.L.R. 122 (2nd Cir.1932), it was said:
Any restraint of the person may be burdensome. But some burdens must be borne for the good of the community (citations omitted). The slight interference with the person involved in finger printing seems to us one which must be borne in the common interest. 55 F.2d at 68.
And further in Kelly, "We prefer, however, to rest our decision upon the general right of the authorities charged with the enforcement of the criminal law to employ finger printing as an appropriate means to identify criminals and detect crime." (Emphasis added). 55 F.2d at 70.
In Hutcherson v. United States, 122 U.S. App.D.C. 51, 351 F.2d 748, (1965), a policeman had been escorted to police headquarters by an officer for the purpose of interrogation regarding conduct which subsequently led to his indictment for bribery. It was held that this amounted to an investigatory session and that the conduct of the policeman's superiors in thus pursuing inquiries fell short of an "arrest." See also Evans v. United States, 377 F.2d 535 (5th Cir.1967).
We are unwilling to impose further restrictions upon the efforts of the police in the detection and punishment of criminals. The use of fingerprinting has long been recognized as a scientific or exact method of identification. It is as valuable in clearing the innocent as it is in bringing his crime home to the guilty. Witness the fact in this case that, of the twenty-four persons whose prints were forwarded to the Federal Bureau of Investigation, twenty-three were at once freed of all suspicion and only one, the appellant, was incriminated by the unalterable evidence of his fingerprints.
If the police, as representatives of organized society, are to be deprived of every effective means of protecting the community against the modern day criminal, nothing will remain for the citizen, save to convert his home into a fortress, and to *277 go armed for his own and his family's protection.
In the case here, nothing the police did or could ever do would alter in the slightest degree the configuration of appellant's fingerprints, nor cause them to be other than peculiar to himself, and different from those of all others. The act of taking fingerprints is quite different in its essential nature from the obtaining of a confession, the authenticity of which becomes suspect by reason of coercion, real or supposed, to which the suspect may be subjected while under the constraint of an illegal arrest. We think the evidence of appellant's prints was properly admitted.
Closely allied to the proposition concerning the prints is appellant's contention that his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated by failure to provide counsel. If appellant was entitled to counsel during the investigatory phase of the proceedings, so were sixty-five or seventy others who were questioned by officers. The complaint seems hypercritical since no attempt was made by the prosecution to use in evidence the confession or admission, or indeed a statement of any kind extracted from appellant after his arrest. Neither the result of the lie detector test nor the signed statement, to which counsel for appellant allude in their brief and which they seem to suggest was a confession of guilt, was offered in evidence, and, in fact neither of these appears in the record at all. The argument on the point is based upon the response of the prosecutrix to a question propounded to her on cross-examination, and quoted in the brief, that "he confessed it all." In the context of her answer, the statement was enigmatic and it was not made clear that she referred to appellant, as her answer dealt only with the fact that, after the attack, she had first tried to telephone one of her sons, and, failing to get him, called another. There was no mention of the appellant in the question nor in her answer.
However, we will assume that the jury could infer that she meant the appellant when she concluded her answer by saying "he confessed it all." Nevertheless, although unresponsive to the question propounded to her by counsel, the statement having been made, counsel for appellant ignored it. There was no objection, no motion to exclude, no request that the jury be instructed not to consider it and no motion was made for a mistrial. Moreover, it is significant that appellant did not assign this as a ground in his motion for a new trial.
It is noteworthy that this same response was later again elicited by counsel in their searching cross-examination of the witness; it is not referred to in the brief, nor argued as error. As before, there was no objection, no motion to exclude and no request that the jury be instructed not to consider it. But the court, of its own motion, intervened and instructed the jury that the statement of the witness was not to be considered. It must be assumed that this action on the part of the court satisfied counsel, as they made no request for further instruction to the jury and did not move for a mistrial. These contemporaneous steps are indispensible under the circumstances shown by the record and reversible error cannot be predicated upon the failure of the trial court to do that which was not even requested. Henry v. State, 253 Miss. 263, 154 So.2d 289 (1963), Vacated 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), rehearing denied, 380 U.S. 926, 85 S.Ct. 878, 13 L.Ed.2d 813 (1965), on remand, 253 Miss. 263, 174 So.2d 348 (1965), motion denied, 381 U.S. 908, 85 S.Ct. 1528, 14 L.Ed.2d 431 (1965). "It, therefore, appears that the appellant who brought out this testimony on cross-examination and did not then object thereto is not in position to ask for reversal of the case on account thereof, if incompetent." Craft v. State, 202 Miss. 51, 57, 30 So.2d 507, 508 (1947). To the same effect are Stone v. State, 210 Miss. 218, 49 So.2d 263 (1950), and Lee v. State, 207 Miss. 96, 39 So.2d 868 (1949), appeal dismissed, cert. *278 denied, 338 U.S. 803, 70 S.Ct. 64, 94 L.Ed. 486 (1949).
Finally, appellant asserts that Mississippi Code 1942 Annotated section 7185-15 (Recompiled 1952), dealing with offenses by minors over thirteen years of age, violates the Fourteenth Amendment of the United States Constitution in that it provides that the circuit court shall have exclusive jurisdiction of such offenders who are charged with capital crimes.
In support of this argument counsel asserts that appellant, on the date of the crime, was fourteen years of age, and was fifteen years old at the time of his trial. These statements are outside the record as the age of the appellant is nowhere established by evidence or otherwise.
The Youth Court Act, providing for certain exceptions to the criminal jurisdiction of the circuit court, under circumstances specified in the act, was not extended by the legislature to the capital crimes, murder and rape. The law is uniform in its application to non-adults who are charged with either of those crimes. There is no irrational disparity in the treatment of offenders as was found in Skinner v. State of Oklahoma ex rel. Williamson, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).
See Bullock v. Harpole, 233 Miss. 486, 102 So.2d 687 (1958).
There was sufficient evidence to establish appellant's guilt. The testimony of the witnesses offered to establish an alibi was contradictory and so generally unsatisfactory that the jury was not required to accept it. We have concluded that the verdict of the jury was fully warranted by the evidence and that appellant's conviction was not the result of a deprivation of any constitutional right.
Affirmed.
GILLESPIE, P.J., and JONES, INZER and ROBERTSON, JJ., concur.