This is an appeal from a conviction on an indictment of burglary and assault and battery with intent to kill and murder Miss Janice Robbins. The Circuit Court of Jackson County, Mississippi, sentenced the appellant to serve ten years in the Mississippi State Penitentiary. Prior to trial appellant filed (1) a motion to quash the indictment which was based upon the systematic exclusion of Negroes and women from the jury and the alleged arrest of appellant without a warrant and without proper cause; (2) a motion to suppress the evidence which was also based upon an alleged arrest of the appellant without a warrant and without proper cause; and (3) a motion to quash the jury panel which was also based upon a systematic exclusion of Negroes and women in the selection of a jury panel. All three motions were overruled by the trial court.
Urging the same grounds, appellant moved for a directed verdict after the State had rested, which motion was likewise overruled as was appellant's motion for a new trial. The trial court's overruling of these motions is assigned as error. A clear understanding of this case requires a recital of the facts.
It is evident that on the night of July 7, 1966, when Miss Janice Wade Robbins, a retired school teacher, was asleep in her home between the hours of 2:00 and 2:30 o'clock, a burglar broke into her home; that when she awoke she saw his form standing above her; that she screamed, and was viciously beaten and choked. The bloodstains on the pillow, bedclothes and floor, shown by the pictures, are mute but convincing evidence of the brutality of her assailant. She feigned death and the attacker fled her home. As soon as she was physically able to do so, she called the police and they came to her home and conducted an investigation. On the following morning they lifted a palm print from the inside of the windowsill of her home, where the burglar had entered. This print was forwarded to the Federal Bureau of Investigation in Washington, D.C.
Miss Robbins described the burglar to Moss Point policeman Leon Lambert and Captain McLaughlin as being short and *Page 782 
"sort of small" but heavy in shoulders and chest. Though Miss Robbins, because of the darkness, could not see the facial characteristics of the intruder, she did, during the trial, identify the appellant as resembling her assailant in height, weight and body build.
On September 6, 1966, the appellant and his brother went to the city hall in Moss Point in search of a job. They were unsuccessful in obtaining jobs and, as they were leaving, Captain McLaughlin of the Moss Point Police Department saw the appellant and told him that he wanted to ask him some questions. Appellant was questioned, as was his brother, Richard Williams. Captain McLaughlin told the appellant he wanted to fingerprint them. Richard Williams agreed to be fingerprinted and told Alphonse to permit his fingerprints to be taken. Both men were fingerprinted and thereafter appellant and his brother left. Appellant contends that Captain McLaughlin put him under arrest, which Captain McLaughlin explicitly denies. McLaughlin further stated that he had no intention of placing appellant under arrest; that appellant and his brother were interrogated and fingerprinted as possible suspects in order to obtain leads and establish, if possible, proper cause to arrest the person who was guilty of committing the burglary and assault and battery on Miss Robbins. Appellant contends that he was arrested by Captain McLaughlin at a time when there was no probable cause for his arrest. Although he stated he went with Captain McLaughlin and voluntarily permitted his fingerprints to be taken, on further examination by his attorney he stated that he did not do it voluntarily. The palm and fingerprints which were taken from the appellant by McLaughlin were subsequently forwarded to the Federal Bureau of Investigation in Washington for comparison with the palm print taken from the windowsill of Miss Robbins' home. An agent of the FBI unequivocally testified that the palm print taken from appellant matched the palm print lifted from the windowsill of Miss Robbins' home. There is no proof in the record to dispute this evidence.
We have for consideration four assignments of error. The first error assigned is that the introduction of appellant's palm print at his trial was in violation of United States Constitution amendments IV and XIV, Mississippi Constitution section 23 (1890), and Mississippi Code 1942 Annotated section 2470 (1956). We fail to find any reversible error for the reason that, first, the testimony considered as a whole clearly establishes the fact that the appellant and his brother, Richard Williams, Jr., were not arrested. The appellant was not booked, he was not incarcerated, and no charges were made against him. After a brief interrogation and after his fingerprints were taken he was released. The record discloses that Richard advised the appellant to permit his finger and palm prints to be taken. The appellant first admitted he voluntarily let his fingerprints be taken, but subsequently denied this fact and stated that police officer Watkins, who was carrying a blackjack, "looked like" he wanted to hit him with the pocketed blackjack.
The temporary detention of the appellant for fingerprinting did not constitute an arrest, and the admission of the prints into evidence was not error. This question has been before this Court on a prior occasion in Davis v. State, 204 So.2d 270 (Miss. 1967). We said temporary detention for fingerprinting in the course of investigation did not constitute an arrest and evidence derived therefrom was not inadmissible as the result of an illegal arrest. See also Wilson v. State, 186 So.2d 208 (Miss. 1966); Fondren v. State, 253 Miss. 241, 175 So.2d 628 (1965); Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Wilson v. Porter, 361 F.2d 412 (9th Cir. 1966); Hutcherson v. United States, 122 U.S.App.D.C. 51,351 F.2d 748 (5th Cir. 1965); Fisher v. United States, 324 F.2d 775 (8th Cir. 1963); Hart v. United States, 316 F.2d 916 (5th Cir. 1963); United States v. Williams, *Page 783 314 F.2d 795 (6th Cir. 1963); United States v. Kelly, 55 F.2d 67, 83 A.L.R. 122 (2nd Cir. 1932). We hold that the acts of Captain McLaughlin and the other officers as reflected in the record do not constitute an arrest of the appellant.
There is no merit in the third error assigned, that the appellant was deprived of due process of law and the equal protection of the laws in violation of United States Constitution amendment XIV because women were totaly excluded from the juries which indicted and convicted the appellant. This question was thoroughly considered and settled in Reed v. State, 199 So.2d 803
(Miss. 1967), cert. den. March 18, 1968, 390 U.S. 413, 88 S.Ct. 1113, 19 L.Ed.2d 1273; Pendergraft v. State, 191 So.2d 830 (Miss. 1966); and State v. Hall, 187 So.2d 861 (Miss. 1966), appeal dismissed, 385 U.S. 98, 87 S.Ct. 331, 17 L.Ed.2d 196 (1966). Appellant is entitled to approve the dissenting opinion in State v. Hall, supra, but it is still not the majority and controlling opinion.
The fourth error assigned by appellant, that the evidence was insufficient to sustain a verdict of guilty, is without merit. The proof is conclusive that the palm print on the inside of the windowsill of Miss Robbins' home, taken by Highway Patrolman George W. Saxon, was identical with the palm print of the appellant taken by Captain McLaughlin and Policeman Robert Carrol Watkins. The testimony of FBI agent, D.E. Hippensteel, that both palm prints were identical and made by the same man is uncontradicted. This evidence, together with the testimony of Miss Robbins, the testimony of officers, and the physical facts, was sufficient to support the verdict of the jury.
It is the second error assigned which gives us the greatest concern, namely, that the trial court erred in refusing to quash the indictments because the appellant established an unrebutted prima facie case of racial discrimination in the selection of grand jurors.
In passing, we do not feel there is any merit in subsection (a) of the second error assigned which urges that vague and subjective standards for the selection of jurors in this cause offer an impermissible opportunity for racial discrimination. We have heretofore held that the direction in Mississippi Code 1942 Annotated section 1766 (Supp. 1966) given to the Board of Supervisors of the respective counties to select and list the names of qualified persons of good intelligence, sound judgment and fair character is directive and shall be construed with the other sections of the Mississippi Code relating to the selection of jurors. This exact issue was raised in Reed v. State,199 So.2d 803 (Miss. 1967), and we reaffirm that which was held in that case. Code sections 1766 and 1762-03 require that jurors must be "qualified persons of good intelligence, sound judgment, and fair character * * *." These sections must be read along with section 1762 (Supp. 1966).
In the Reed case, supra, we held as follows:
 These related statutes are in pari materia. Many of their criteria are wholly objective in the definition of a competent juror. These standards modify and define the more general criteria of intelligence, judgment and character. Moreover, most of the states of the Union use in part a formula substantially similar to that of "good intelligence, sound judgment and fair character." Alabama Code, tit. 30, § 21 (1958); Ga. Code Ann. § 59-106 (1965); N.C. Gen. Stat. § 9-1 (1953); Texas Rev.Civ.Stat. art. 2133 (1964). Considered as a whole, the statutes providing for selection of jurors are not void for vagueness, but reasonably definite standards. See Miss. Code 1942 Ann. § 1798 (1956) (jury-laws directory only). (199 So.2d at 806.)
With reference to appellant's argument as to the disproportionate number of whites as opposed to Negroes on jury venires, *Page 784 
this Court held in Harper v. State, 251 Miss. 699, 171 So.2d 129
(1965), as follows:
 We recognize that in some counties compliance with these constitutional requirements may present difficulties, but they must be surmounted if the criminal laws are to be effectively administered. The United States Constitution does not require proportional representation of the races on a jury, or even that members of a particular race must be on a particular jury. As a practical matter, what is required is that the county officials must see to it that jurors are in fact and in good faith selected without regard to race. (251 Miss. at 710, 171 So.2d at 134.)
Reviewing the proof which was offered by the appellant in support of his motion to quash the indictment, the motion alleged that the total population of Jackson County according to the 1960 census was approximately 55,522 persons, of which number 44,658 are members of the white race and 10,817 are members of the Negro race; that there are Negroes in the county who are qualified to serve on the grand jury of the county but that Negroes are excluded from serving solely because of race; and that Negroes were excluded from serving on the grand jury which indicted defendant, solely because of race, in violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.
It was stipulated by the State and the defendant that according to the 1960 census there were approximately 55,522 persons in Jackson County and that of this number there were 10,817 Negroes. It was further stipulated between the parties that the testimony on the motion to quash the indictment would be the same as that heretofore entered in Case No. 5621, styled State v. Montcrief, which case is on the docket of the Circuit Court of Jackson County, and being primarily the testimony of Mr. Vertis G. Ramsey, the circuit clerk. It was further stipulated that the grand jury which indicted appellant was empaneled and did have as one of its members a Negro; that to the Court's knowledge Negroes have been called and selected to serve on petit juries and grand juries of Jackson County since the present Judge assumed the Bench. The court, in overruling the motion to quash the indictment, further stated that there have been as many as five or six Negroes called at one time and that there is no systematic exclusion of Negroes from the juries in Jackson County. The transcript of the hearing on the motion to quash the indictment in State v. Montcrief, which was introduced as Exhibit No. 1, discloses that Mr. Vertis G. Ramsey has held the position of Circuit Clerk of Jackson County for eighteen years. He testified that he submitted a list of qualified electors to the Board of Supervisors; that this list was prepared from the registration books and that if a citizen registered, his name was automatically put on the poll book; that a person did not have to pay a poll tax in order to register; that in 1963 no one was placed on the jury list who had not paid a poll tax. The clerk testified that for the first week of the court seventy-five names were drawn out of the jury box and and that forty-five names were drawn each week thereafter; that of the seventy-five names, seventeen were drawn for service on the grand jury. Mr. Ramsey testified that of the seventeen persons who were drawn for grand jury duty, none were Negroes.
After obtaining an opportunity to ascertain more accurately the personnel of the grand jury, Mr. Ramsey testified that there was one Negro by the name of James F. Kelly who served on that particular grand jury. The clerk testified that "in ordinary human experience, that the ratio of white persons to Negro persons on the Grand Jury," about which he was testifying, was "the order of 16 to 1." The clerk outlined the procedure generally utilized in Mississippi for the drawing and selecting of grand jurors in open court from *Page 785 
the jury panel which had been drawn for that term and week of court.
While the proof offered by appellant is not as cogent or full as the proof which was offered in Watts v. State, 196 So.2d 79
(Miss. 1967), nevertheless, just as Mercutio's wound was not so deep as a well nor so wide as a church door but was enough, so is the proof of systematic exclusion of Negroes here not complete, or fully shown, but is enough to establish a prima facie case. The proof does show that in 1960 there was a Negro population in Jackson County of 10,817; that there were approximately 44,705 white persons; that the whites outnumbered the Negroes more than 80%. The circuit clerk testified that the same method of selection and the same standards, so far as he knew, in the selection of grand juries had been identical for over eighteen years. Of course, since the grand jury venire and panels are drawn by lot, a comparable, proportion of Negroes is presumably contained in the jury list, but the proof shows that a disproportion between Negroes and whites on the jury lists has existed over a long period of time. Appellant urges that this could not have occurred by chance and that the opportunity for racial discrimination in the preparation of the jury lists has been realized, citing Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967). There is proof that only one grand jury venire in the past eighteen years had two Negroes on it. There was only one Negro on the grand jury panel of seventeen that actually indicted the appellant. It is unnecessary for us to consider the rule as set forth in Whitus v. State of Georgia, supra, for the reason that we conclude that the appellant has made out a prima facie case of the systematic exclusion of Negroes from the jury which indicted the appellant and from juries which have been selected in Jackson County. It was incumbent upon the State to show that there was no systematic exclusion of Negroes from the grand jury and that appellant's constitutional rights were not infringed by the manner and procedure in which the grand jurors were drawn. The State should have shown that a fair cross section of the county was obtained by the method utilized by the Board of Supervisors as was done in McLelland v. State, 204 So.2d 158 (Miss. 1967) and Reed v. State,199 So.2d 803 (Miss. 1967). In the Reed case we pointed out that supervisors are laymen not skilled in verbally duplicating the statutory criteria, but a fair reading of their testimony shows that in substance they were following the statutes. This was not done in the case at bar. The presumption of purposeful prior exclusion should have been rebutted by witnesses offered by the State, as was done in Reed v. State, supra. See Boyd v. State, 204 So.2d 165 (Miss. 1967) and Davis v. State,204 So.2d 270 (Miss. 1967).
This Court has repeatedly held that the discriminatory exclusion of Negroes from the venire is in violation of the defendant's rights under the Fourteenth Amendment. Watts v. State, 196 So.2d 79 (Miss. 1967); Shinall v. State, 187 So.2d 840
(Miss. 1966); Black v. State, 187 So.2d 815 (Miss. 1966); Bass v. State, 254 Miss. 723, 182 So.2d 591, 183 So.2d 483 (1966); and Harper v. State, 251 Miss. 699, 171 So.2d 129 (1965).
We have held that where it is shown that the supervisors in the selection of a jury were not influenced by race and that a fair cross section of the county was obtained as shown in the immediately above noted cases, and that the jurors were drawn impartially in accordance with the controlling statutes, that there was no systematic exclusion of Negroes. McLelland v. State, supra.
In the case at bar the State did not show these essential elements in overcoming the prima facie case made out by appellant. For these reasons, the lower court should have sustained the motion to quash the indictment and the venire which tried him, *Page 786 
and therefore the motion is sustained and the indictment and venire are quashed.
Reversed and remanded for further proceedings in accordance with this opinion.
GILLESPIE, P.J., and RODGERS, JONES and SMITH, JJ., concur.