ROBERTSON, Justice:
Everett Sam was indicted, tried and conT victed in the Circuit Court of Neshoba County of manslaughter by culpable negligence when Edith McMillan died as the result of injuries received in á head-on collision of her car with that of Sam. Appellant Sam was sentenced to serve a term of twenty years in the Mississippi State Penitentiary.
About 2:30 P.M. on Saturday, November 20, 1971, Everett Sam, a Choctaw Indian, was riding as a passenger on the front seat of his car. Freddie Mae Frazier, also a Choctaw Indian, was driving Sam’s car in a westerly direction on State Highway 16 west of Philadelphia, Mississippi. Sam had been drinking beer and whiskey since the night before; in fact, Miss Frazier testified that he was drinking a beer at the time of the fatal collision.
Mrs. Edith McMillan, accompanied by four other ladies, was driving, her new Oldsmobile east on Highway 16; they were going to Philadelphia to shop.
Freddie Mae Frazier testified that Sam first began to fool with the floorboard gear shift lever of his car. He then grabbed the steering wheel causing the car to veer toward the right. As she struggled with him to straighten up the car, Sam kept grabbing the steering wheel and caused the car to veer violently to the left and cross over into the eastbound lane of Highway 16 directly in front of Mrs. McMillan’s car. Mrs. McMillan, entirely in her eastbound lane, could not avoid colliding head-on with Sam’s car. Mrs. McMillan and two of her passengers were fatally injured and died shortly thereafter. Appellant’s first assignment of error is:
“The Trial Court erred in failing to sustain the Defendant’s motion to quash the grand jury indictment due to the systematic exclusion of Indians and to a lesser extent of blacks”.
Appellant called, in support of his motion to quash, four members of the Board of Supervisors. The fifth member was sick, was not called and did not testify. Supervisors Chaney, Gray, McCraw and Dickinson testified that they picked names at random from the voter registration books, the homestead exemption lists and the tax rolls; that there were no identifying marks on these official record books, and that it was impossible to determine the race, sex, creed or religion of any person on these lists. The testimony of the four supervisors was that they sought to impartially select the names of prospective jurors for inclusion in the jury box without regard to race, sex, religion or national origin.
Appellant also called as a witness Robert C. Benn, Superintendent of the Choctaw Agency, Bureau of Indian Affairs in Neshoba County. Benn was shown the grand jury lists from 1969 through the February term, 1973, and he responded: “I don’t recognize any of these names as being the names of Choctaws.” The 1970 United States Census for Neshoba County was also introduced.
After an exhaustive preliminary hearing, the court overruled the motion to quash the grand jury indictment. Among other things, the court said:
“Now beginning with 1969 at the February Term of this Court it has been shown here — undertaken to be shown, first by the supervisors of Neshoba County, Mississippi: all the supervisors testified except Mr. Breazeale, a member from District five, who is ill. Their testimony stands unchallenged, each one testified that he uses, in selecting the *925 names as he is required to do by law that go into the Minutes of the Board of Supervisors and then it’s transferred to the Clerk of the Circuit Court of this county, the names that are chosen by his own personal knowledge of the people in his district from the registration books of this county, from the homestead exemption rolls and from the poll books of this county. They have testified, without dispute, that they sought to select both men and women, without regard to race, national origin, religion, sex or otherwise, and that they sought to select names of people who are of good — fair moral character, sound judgment and that have not been convicted of an infamous crime or the unlawful sale of intoxicating liquor within the past five years, which is a bar to serving in the State of Mississippi. ... So it stands without dispute here that the record shows positively from the Movant’s own testimony that the supervisors have substantially complied with the laws of the Federal Government and the laws of The State of Mississippi. For instance, there’s one supervisor here, I believe it’s district three, that the supervisor testified that he didn’t have a single Indian in his district. Well, if the man hasn’t got any Indians in his district he can’t put any names in there. Another testified he just had a few Negroes. Well, you can’t put any more names in than you have in your Beat or in your District. So it goes without saying, and the inescapable conclusion is, gentlemen, as shown by the testimony in the record in this case, that the motion to quash this indictment because of the systematic exclusion of members of the Choctaw race and members of the Negro race is not well taken and should be dismissed and the Motion is dismissed.”
In order to make out a prima faT cie case of systematic exclusion, a defendant must show: (1) The opportunity for racial discrimination existed by reason of a racially biased source of potential jurors; and (2) The use of the infected source produced a significant disparity between the percentage of the minority race in Neshoba County and the percentage of that same race on the grand jury, in this instance. Wright v. Smith, 474 F.2d 349 (5th Cir. 1973). If there is no proof that the selection procedures are biased, proof of disparity between racial percentages in the population and on the juries is not sufficient to shift the burden of explanation to the State. In Wright v. Smith, supra, the Fifth Circuit Court of Appeals said:
“It is true that there was a significant disparity between the percentage of blacks in Fulton County and the percentage of black grand and petit jurors; but this disparity was due not to the use of a racially biased source of potential jurors, but rather to the fact that a greater percentage of whites than of blacks fortuitously filed tax returns and thereby entered the pool of prospective jurors. Absent proof that selection procedures are biased, proof of disparity between racial percentages in the population and on the juries is not sufficient to shift the burden of explanation to the state.” 474 F.2d at 352.
In Dorsey v. State, 243 So.2d 550 (Miss.1971), we said:
“There is no evidence of discrimination against Negroes in the constitution of the jury list. Proportional representation of the races on a jury is not required. What is required is that county officials must see to it that the jurors are in fact and in good faith selected without regard to race. Williams v. State, 210 So.2d 780 (Miss.1968).” 243 So.2d at 552.
In Watkins v. State, 262 So.2d 422 (Miss.1972), we were of the opinion:
“The mere reference to a census report and thereafter numerically depicting the white-black ratio of a county, without more, is insufficient in our opinion to shift the burden of proof upon a dis *926 crimination issue from the movant who has the affirmative of the issue to the State.” 262 So.2d at 423.
The trial court was correct in overruling the motion to quash the indictment.
Another contention of the appellant is that the trial court erred in not sustaining a motion for continuance because of the prejudicial effect of a newspaper article. On February 7, 1974, there appeared in the Neshoba Democrat, a newspaper of countywide circulation, an account of the Mississippi Supreme Court’s ruling in State v. Freddie Mae Frazier [289 So.2d 690], Appellant contends that this language of the news article was prejudicial:
“The Frazier woman was identified as the driver.
“Monday, the Mississippi Supreme Court overturned the conviction. The court said there was ample evidence that Everett Sam grabbed the steering wheel, causing the car to veer across the road.”
The motion for a continuance was filed on February 11, 1974, and upon hearing argument thereon the court overruled the motion and the trial began on February 22, 1974. The court was correct in overruling this motion for continuance. This brief news item appeared one time, fifteen days before the trial. It was a factual report in a newspaper neither inflammatory nor prejudicial.
Appellant next contends that the trial court erred in denying defense counsel the right to interview Freddie Mae Frazier out of the presence of the district attorney, and, afterward, out of the presence of her court-appointed attorney. While perhaps it was error for the trial court to at first refuse to allow defense counsel to interview Freddie Mae out of the presence of the district attorney, it was harmless error because the restriction was removed sixteen days prior to trial, and appellant’s counsel could have interviewed Miss Frazier out of the presence of the district attorney at any time within that period. Also, at the trial appellant did not object to the testimony of Miss Frazier, and his counsel vigorously cross-examined her.
A very careful study of the voluminous record in this case has convinced us that the jury was fully justified in finding from the evidence adduced that the defendant was guilty of manslaughter by culpable negligence beyond a reasonable doubt.
The conviction and sentence are, therefore, affirmed.
Affirmed.
GILLESPIE, C. J., RODGERS, P. J., and INZER, SMITH, SUGG and BROOM, JJ., concur.